OPINION
Appellant Robert Kirkpatrick (hereinafter "father") appeals the February 27, 2001 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of his son, Josef Epperly, to appellee Stark County Department of Job and Family Services ("the department") and terminated appellant's parental rights and responsibilities.
 STATEMENT OF THE FACTS AND CASE
On February 8, 2000, the department filed a complaint alleging Josef Epperly and his two sisters were dependent, neglected, and abused children.[1] Beverly Epperly, Josef's maternal grandmother, was granted custody of Josef in January, 1999, after the department initially became involved with the family. The department filed the instant complaint after it learned Beverly Epperly withheld food and water from Josef as a form of punishment. Josef was placed in the temporary custody of the department. The trial court subsequently adjudicated Josef an abused child after grandmother stipulated to such finding.
On August 23, 2000, the department filed a motion for permanent custody of Josef. Father was incarcerated at the time. After his release from prison in September, 2000, father filed a motion for appointment of counsel and a motion for a continuance of the permanent custody hearing. The trial court appointed Barbara Eisenbrei as counsel for father. The trial court conducted the permanent custody hearing on February 21, 2001. Father's father, Robert H. Kirkpatrick (hereinafter "grandfather") filed a complaint for custody as well as a motion to intervene on February 22, 2001.
At the hearing, Vicki Knapp, father's parole officer, testified father was placed on post-release control for a period of three years following his incarceration on receiving stolen property, possession of cocaine, and misuse of credit cards convictions. Three of the four urine samples father submitted between November 21, 2000, and January 8, 2001, tested positive for cocaine. As a result of the positive urine samples, father was sanctioned appropriately. Father was arrested on a new felony charge, and made himself a violator at large by failing to report. Knapp stated father had not corrected his substance abuse problem and had not completed any type of substance abuse program.
The department called father as if on cross-examination. Father testified he had seen Josef four or five times since he established paternity in 1998. Father acknowledged he did not complete the Goodwill program, which was part of his court ordered case plan. Father explained he voluntarily quit the program because he "didn't like being harassed." Tr. at 21. Father stated his intention to return to a parenting program. Father further acknowledged his failure to complete the Quest program, which was also part of his court ordered case plan. Father conceded he has a substance abuse problem.
Judy Gaetje, a parenting instructor with Goodwill Industries, testified she was assigned to teach father's class. Gaetje noted father attended approximately 31 of the 40 scheduled classes. In the beginning, father was very motivated and eager to establish a positive relationship with Josef. Sometime after the holidays, father's attitude and demeanor changed. He fell asleep during class, acted very nervous, did not make eye contact with anyone, and lacked concentration. Father completed 2 of his 11 individual goals prior to terminating the program.
Laura Hetrick, an ongoing case worker with the department, testified she was assigned to the instant matter in March, 2000. Hetrick testified Josef had been in the temporary custody of the department for more than 12 months of the last 22 consecutive months. The case worker described the case plan she developed for father, which included Goodwill parenting and Quest Recovery Services. Hetrick noted father failed to sufficiently complete either Goodwill or Quest.
With respect to the best interest determination, Hetrick testified Josef, who is seven years old, is currently in foster care and doing well. When Josef was removed from his grandmother's home, he was malnourished. Josef had gained weight and grown taller. Although Josef is doing fairly well in school, he has started to act out since commencing visitation with father. These behaviors include aggression, not listening, bed wetting, and deprecating. Josef had returned to counseling. Josef is currently in a foster home and his foster parents are willing to adopt him.
Grandfather testified on father's behalf. Grandfather explained he attempted to gain custody of Josef during the department's initial involvement with the family and presently would like to have custody of Josef. Grandfather acknowledged he would never raise Josef in his current neighborhood because "its just not a proper neighborhood for children." Tr. at 56. Grandfather admitted he did not currently own a home in a more appropriate neighborhood.
Grandfather also testified during the best interest portion of the hearing. He stated he thinks father should have custody of Josef because father is Josef's biological father and loves the boy. Grandfather testified he would not allow father to visit Josef unless such visits were conducted under his own supervision. Grandfather conceded he was convicted for soliciting in 1999.
Adelle Wilds, Josef's foster mother, testified regarding the changes in Josef's behavior since arriving at their home. Josef is currently tutored once a week. He is involved in karate classes. Wilds stated Josef had returned to counseling since beginning visitation with father. She noted Josef viewed father as a stranger and did not enjoy their visits. Josef also started to wet his bed again.
Following the hearing, the trial court issued a judgment entry, terminating father's parental rights, privileges and responsibilities, and granting permanent custody of Josef to the department. The trial court also filed findings of fact and conclusions of law.
It is from this judgment entry father appeals, raising the following assignments of error:
 APPELLANT WAS PREJUDICIALLY DEPRIVED OF HIS UNITED STATES AND OHIO CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.
 THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW WHEN IT FAILED TO GRANT CUSTODY OF THE MINOR CHILD TO HIS PATERNAL GRANDFATHER.
 THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
Any other facts relevant to our discussion of father's assignments of error shall be contained therein.
 I
In his first assignment of error, father raises a claim of ineffective assistance of counsel.
The standard of review of an ineffective assistance of counsel claim is well-established.[2] In order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different.[3]
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.[4] Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance.[5]
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[6] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[7]
Father complains of five errors by trial counsel he maintains prejudiced him. First, father alleges trial counsel neglected to inform him of his Fifth Amendment Right against self-incrimination or to advise him to assert his Fifth Amendment Right prior to making incriminating statements. Second, father submits trial counsel failed to object to the department's cross-examination of his father relative to criminal history as such questioning went beyond the bounds of Evid. R. 609 and 403. Next, father claims trial counsel failed to file a motion for change of legal custody to grandfather. Additionally, father submits trial counsel failed to object to the admission of privileged information or to instruct him to assert his privilege. Finally, father asserts trial counsel failed to object to the erroneous admission of certain documents into evidence.
With respect to father's first and fourth assertions, we find he is unable to satisfy the second prong of the Strickland test. The department called father to testify as if on cross-examination, following the testimony of Vicki Knapp. The department questioned father regarding the urine samples he submitted for analysis. As father was attempting to recall the dates of the urine screens, he made the following statement:
 I know I had to do a urine when I first got out which was [sic] around the 21st, I know that one was dirty, and then I know of one other one that should have been dirty, that's what I was told, and then there was another time when we had another court hearing where my patrol (sic) officer was drilling me out here in this lobby in front of her and it was like she told me either I answer her questions now which I thought was kind of unfair for my parole officer to be asking the questions in front of my case — in front of the case worker because that could jeopardize me, or whatever, but, you know, it was either that or go to jail, so I had to answer questions and it wasn't a fact of the matter of dirty urine, just because I said so, `cause I had to please my parole officer, either that or get thrown in jail back then, but * * *
Tr. at 13.
Attorney Eisenbrei requested a two minute recess to consult with her client. The trial court asked Attorney Eisenbrei if she was concerned about constitutional privilege, to which she responded, "Yes." Tr. at 14. The trial court permitted father to speak with his attorney. Following the recess, father's cross-examination continued:
BY THE COURT: Okay, you may continue.
BY MR. MUTH [Attorney for the department]:
 Q. Sir, on November 21st, 2000, do you recall submitting your urine for analysis at the request of your adult parole officer?
A. Yes, I do.
Q. And that was your urine that you submitted?
A. Yeah.
 Q. And do you recall on November 29th, 2000, submitting your urine for analysis?
A. No, I do not recall that.
 Q. Do you recall on January 5th, 2001, submitting your urine for analysis?
A. Nope, don't recall that either.
Q. How about on January 8th, 2001?
A. I don't recall that either.
 Q. How about on January 12, 2001, submitting your urine at Quest Recovery (sic) Services * * *
A. I don't recall that either.
Q. You don't recall going to Quest?
 A. Oh, I've went to Quest a bunch of times, I don't recall no dates.
 Q. Well, would it seem unusual for you to have submitted your urine in January 12th?
 A. It doesn't seem unusual for me to have submitted urine, no.
 Q. Did you ever submit urine at the request of Miss Hetrick.
A. Yes.
Q. How many times?
A. I don't recall.
 Q. Did you ever refuse to submit your urine when requested by Miss Hetrick?
A. Never.
 Q. Now sir, you stated that you've been in trouble before, is that correct?
A. Yep.
Q. How many times?
A. I don't recall.
Tr. at 14-15.
Father did not assert his Fifth Amendment right or his patient privilege at this time. However, when Attorney Muth asked father if he violated the conditions of his parole, Attorney Eisenbrei objected, asserting father's constitutional right against self-discrimination. Tr. at 19. Father also invoked his fifth amendment right at a subsequent point in the questioning. Tr. at 20.
Upon review, we find the record is devoid of any evidence to support father's assertion trial counsel did not advise him of his rights prior to trial. We find, based upon Attorney Eisenbrei's request for a recess and father's subsequent testimony, an inference can be made father was advised of his constitutional rights. Assuming, arguendo, trial counsel failed to inform father of his rights, we find such failure was not prejudicial as the evidence adduced from father's allegedly incriminating statements was also adduced through the testimony of Knapp and Hetrick.
Turning to father's second, and fifth assertions, we find father is unable to satisfy the first prong of Strickland. Father submits trial counsel's failure to object to the introduction of his criminal record was ineffective as such evidence exceeded the scope of Evid. R. 609 and 403.
Evid. R. 609 provides:
 (A) For the purpose of attacking the credibility of a witness:
 (1) subject to Evid. R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted.
 (2) notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 (3) notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.
* * *
 (F) When evidence of a witness's conviction of a crime is admissible under this rule, the fact of the conviction may be proved only by the testimony of the witness on direct or cross-examination, or by public record shown to the witness during his or her examination. If the witness denies that he or she is the person to whom the public record refers, the court may permit the introduction of additional evidence tending to establish that the witness is or is not the person to whom the public record refers.
Evid. R. 403 reads:
(A) Exclusion mandatory
 Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
(B) Exclusion discretionary
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
We find Evid. R. 609 to be inapplicable to the instant action. The department did not elicit the testimony from father regarding his criminal history for impeachment purposes, but rather as substantive evidence of father's lack of fitness. Such evidence is certainly relevant in a permanent custody proceeding, and such relevance is not outweighed by unfair prejudice.
In light of our disposition of father's second assignment of error,infra, we find father is unable to satisfy the second prong ofStrickland with respect to his third assertion trial counsel was ineffective for failing to file a motion for change of custody to grandfather.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, father argues the trial court abused its discretion and/or erred as a matter of law in failing to grant permanent custody of Josef to grandfather. We disagree.
R.C. 2151.412(G) provides:
 In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
* * *
 (2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;
* * *
 (5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency;
(Emphasis added).
"The language of R.C. 2151.412(G) is precatory rather than mandatory."[8] "Consequently, this statute does not require the trial court to act in a specific manner, but rather suggests criteria to be considered in making its decision regarding case plan goals."[9] Father maintains grandfather was a suitable member of Josef's extended family; therefore, should have been considered for legal custody. The evidence presented established grandfather did not live in an appropriate residence for Josef and did not have an alternative living arrangement. Grandfather was convicted of soliciting in 1999. Based upon the foregoing and the entire record, we find the trial court did not abuse its discretion in determining grandfather was not a suitable relative with whom to place Josef.
Father's second assignment of error is overruled.
 III, IV
Because father's third and fourth assignments of error are interrelated, we shall address said assignments of error together. In his third assignment of error, father submits the trial court's finding the best interest of Josef would be served by granting permanent custody to the department was against the manifest weight and sufficiency of the evidence. In his fourth assignment of error, father argues the trial court's finding Josef could not or should not be placed with father within a reasonable time was against the manifest weight and sufficiency of the evidence.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.[10] Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.[11]
The relevant statute is R.C. 2151.414, which provides, in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned * * *, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
* * *
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
In determining the best interest of a child, R.C. 2151.414(D) states:
 (D) * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Upon review of the record, we find the trial court's finding it was in Josef's best interest to grant permanent custody to the department is not against the manifest weight of the evidence. The trial court found, pursuant to R.C. 2151.414(B), Josef could not be placed with father within a reasonable time or should not be placed with father. However, a best interest determination, standing alone, is not sufficient to grant permanent custody of a child to an agency and divest parents of their parental rights. R.C. 2151.414(E) states:
 In determining at a hearing held pursuant to division (A) of this section . . . whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with the parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, * * * of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
 (3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
* * *
(10) The parent has abandoned the child.
* * *
 (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 (15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
(16) Any other factor the court considers relevant.
The trial court found father has an extensive criminal history and was incarcerated in the Stark County Jail on a pending felony, which occurred while he was under post-control release. Father failed to complete any of his case plan objectives. The trial court further found father's repeated incarcerations prevented him from providing care for Josef.
Additionally, the trial court found Josef had been in the temporary custody of the department for 12 or more months of a consecutive 22 month period. As such, the trial court was not required to find Josef could not or should not be placed with father within a reasonable time.[12] In light of the foregoing and based upon the entire record in this matter, we find the trial court did not abuse its discretion in granting permanent custody of Josef to the department.
Father's third and fourth assignments of error are overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
Hoffman, J. Gwin, P.J. and Farmer, J. concur
[1] Appellant is not the biological father of Josef's two sisters, and, as such the trial court's disposition relative to these two children will not be reviewed.
[2] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673.
[3] State v. Bradley (1989), 42 Ohio St.3d at 136.
[4] Id. at 142.
[5] Id.
[6] Id. at syllabus para. three.
[7] Id.
[8] In Re: Rollinson (April 27, 1998), Stark App. Nos. 97-CA-00243-206, unreported.
[9] Id.
[10] Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported.
[11] C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279.
[12] In re: Woodall (June 13, 2001), Summit App. No. CA20346, unreported.